152 P.2d 255

STATE ex rel. NEW MEXICO DRY CLEAN-
ING BOARD v. CAUTHEN.

No. 4817.

Supreme Court of New Mexico.

Sept. 13, 1944.

George A. Shipley, of Alamogordo, for appellant.

Frazier & Quantius, of Roswell, for appellee.

SADLER, Chief Justice.

The appellant was sued as defendant below by the State upon the relation of New Mexico Dry Cleaning Board to enjoin him from engaging in the dry cleaning business unless and until he had complied with the laws of the state regarding such industry, including the payment of all current and delinquent license fees. The complaint disclosed that defendant was delinquent in the payment of the annual license fee of $25 for each of the business years 1941–1942 and 1942–1943, totaling $50, and that the current fee for the business year 1943–1944 would presently accrue on July 1, 1943, only thirty days following filing of the complaint. The plaintiff further alleged defendant's failure and refusal to pay the delinquencies, notwithstanding demands therefor. Injunction was prayed not only under the authority of 1941 Comp. § 51-2110, a section of the act creating the Board, but also upon the ground of the inadequacy and ineffectiveness of any other remedy provided by law.

The defendant answered the complaint, admitting, as alleged, payment of the original registration fee of $25 provided by the

act and admitting default in payment of the license fee for each of two years, for doing business without payment of which the injunction against him was sought. For further answer in the nature of a demurrer he challenged sufficiency of the allegations of the complaint to state a cause of action for injunction in that they failed to show the plaintiff would suffer irreparable injury if injunction were not granted or that an adequate legal remedy did not exist. And for still further answer, the defendant challenged on constitutional grounds the validity of L. 1941, c. 198 (1941 Comp. § 51-2101 et seq.) under the authority of which the plaintiff was acting. A reply denying any new matter in the answer put the case at issue and the trial court and counsel apparently treating the pleadings as ripe for judgment, awarded the injunction prayed for. The defendant prosecutes this appeal.

In this court, the defendant assigns three errors which he argues under two points that may be briefly stated as follows: (1) No cause of action for the equitable relief of injunction was alleged; (2) the act creating the plaintiff Board is unconstitutional and void. At the conclusion of the trial consisting solely of the pleadings and the argument of counsel thereon, the court filed its written opinion reading as follows:

"This cause having come on regularly to be heard; and the Court, having heard and considered the arguments of counsel, is of the opinion that Plaintiff should prevail herein. There are no issues of fact present, but the pleadings present matters of law only. The Defendant is engaged in the dry cleaning, pressing and dyeing business in Alamogordo, New Mexico, under the name of Alamo Steam Laundry, and he has failed and refused to pay annual license fees required by the provisions of Section 8, Chapter 198 of New Mexico Session Laws of 1941, for the years 1941–42 and 1942–43 and as due on July 1, 1943, being in the total sum of $75.00. The questions of law presented are as to the validity of said Chapter 198, and as to the right of Plaintiff to enjoin defendant from engaging in his said business by reason of his failure and refusal to pay said license fees. It seems to have been determined by our Supreme Court in the case of State v. Alexander, 46 N.M. 156, 123 P.2d 724, under a declaratory judgment proceeding, that said Act is valid, excepting such parts thereof as have to do with minimum price provisions. The present case has nothing to do with such minimum price provisions. Aside from such determination by our Supreme Court, this Court cannot see wherein said Act is invalid such as to excuse defendant from paying said license fees. In argument it was disclosed that this Court, under date of December 18, 1942, in the case of State of New Mexico ex rel. W. L. Barrowman, Chairman, Daniel H. Taichert, Secretary, M. B. Smith, Member, New Mexico Dry Cleaning Board, Plaintiff, v. O. M. Voyde, Defendant, No. 3813 Otero County, ruled, for the purpose of its judgment therein rendered against Plaintiff, that said chapter 198 was an Act

by way of exercise of police power and that Plaintiff could not collect delinquent license fees in a suit at law in absence of provision in the Act authorizing collection in that manner. Such decision and ruling by this Court has never been set aside nor overruled, and the Court at this time sees no reason for receding from its said ruling. The license provisions of said Act are valid and since collection thereof cannot be had by suing therefor, the Court is of the opinion that relief by way of permanent injunction as prayed for by Plaintiff in instant case is appropriate and proper and authorized by the provisions of Section 10 of said Act."

■ It thus appears that the learned trial judge rested his decree sustaining plaintiff's right to the injunction sought upon two grounds: (1) Upon the authority of State v. Alexander, 46 N.M. 156, 123 P.2d 724, as having sustained the validity of the questioned Act, L. 1941, c. 198, rendering stare decisis the attacks here made upon it; and (2) upon the ground that, since plaintiff could not maintain an action at law to recover the license fees involved, there was no adequate legal remedy, thereby giving equity jurisdiction to enjoin. As to the first ground, we think counsel for defendant is correct in appraising State v. Alexander, supra, as being stare decisis only to the extent of holding the minimum price provisions of the act invalid for indefiniteness and uncertainty. While it is true, the trial court in that case concluded that with the exception of the

provisions held void, the entire act was valid and enforceable and we affirmed its judgment; nevertheless, the record in that case discloses opposing counsel in practical agreement that, save for the minimum price provisions assailed, the act was valid. The trial court, therefore, went no further than the necessities of the case demanded in appraising the validity of the act, nor was it our intention to do more in affirming the declaratory judgment it rendered. We, then, are free here to treat the validity of the act as a matter of first impression uninfluenced by any previous holding except in the respect already indicated.

We shall consider the points argued in reverse order of their presentation by defendant in his brief in chief, since, if the second point which challenges the constitutionality of the act be good, a determination of the first point will be unnecessary. This brings us at once to a consideration of defendant's challenge to the constitutionality of the act bottomed upon the rather broad statement of Point II as follows:

"Chapter 198 of the Laws of 1941, creating the New Mexico Dry Cleaning Board and conferring thereon certain powers and requiring the payment of license fees by those engaged in the dry cleaning business in the State of New Mexico, is unconstitutional and void."

■ Before becoming specific in the matter of his attacks on the constitutionality of the act, the defendant presents some

440

observations which question the policy of the legislation assailed. He states:

"This act is the product of an era which we hope and believe has passed, in which many legislatures seem to have felt that the public health, welfare and safety required the setting up of separate boards and commissions for the regulation of almost every conceivable occupation, profession and business."

The defendant then follows with an admission that there are certain pursuits and certain types of business which so affect public health and safety as to require reasonable regulation. As to them, he admits the right and power of the legislature to enact reasonable regulations in the interest of public health and safety. He denies that the cleaning and dyeing industry is a business of that type. At no point in either his brief in chief or his reply brief does he point to any particular provision of the state or federal constitution which he claims the act violates. He does argue vigorously, however, that it constitutes an unreasonable exercise of the police power under the guise of regulation and, of course, if this be true the act violates the due process clause of the state constitution, Article II, § 18, and a like provision found in the Fourteenth Amendment to the federal constitution.

The question presented thus reduces itself to a consideration whether, with the price fixing provisions of the act eliminated by our decision in State v. Alexander, supra, the defendant has successfully challenged it as representing an unreasonable and unwarranted exercise of the police power. This will be answered by deciding whether, as against the attack here made, it bears any reasonable or valid relation to the public safety, health or morals. For, if it does, our inquiry must end, the policy and wisdom of legislation touching such matters being of purely legislative concern. Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779; Mitchell v. City of Roswell, 45 N.M. 92, 111 P.2d 41; State v. Cleveland, 47 N.M. 230, 141 P.2d 192.

Admittedly, there is divided authority upon the extent to which the dry cleaning industry is a proper subject of regulation as a police measure. See Kent Stores v. Wilentz, D.C., 14 F.Supp. 1; Becker v. State, 37 Del. 454, 185 A. 92; State v. Harris, 216 N.C. 746, 6 S.E.2d 854, 128 A.L.R. 638, where the attempted regulation was denied; and Jack Lincoln Shops v. State Dry Cleaners' Board, Okl.Sup., 135 P.2d 332; Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956; Smith Bros. Cleaners and Dyers v. People, 108 Colo. 449, 119 P.2d 623; Carter v. Stevens, 211 Cal. 281, 295 P. 28; Ex parte Weisberg, 215 Cal. 624, 12 P.2d 446; Publix Cleaners, Inc., v. Florida Dry Cleaning and Laundry Board, D.C., 32 F.Supp. 31, where regulatory police measures were upheld. For annotation and supplemental annotation under subject "Public Regulations of Dry Cleaning and Dyeing Establishments," see 49 A.L.R. 110 and 128 A.L.R. 678, where additional cases may be found.

Some legislation regulating the industry seemingly stresses the fire hazard as of the greater importance in justifying its enactment. Cf. Tharp v. City of Clovis, 34 N.M. 161, 279 P. 69. The legislation involved in the California cases cited, supra, is of that kind. In Carter v. Stevens, supra, the court said [211 Cal. 281, 295 P. 31]:

"The Legislature has very properly placed the operation of clothes-cleaning establishments, conducted in the manner described in said act, and in which the use of volatile and inflammable substances and heat, steam, and hot water play the principal part, in the list of 'hazardous businesses.' That the whole subject-matter comes within the power of police regulation there is not room for a doubt."

In the later California case, Ex parte Weisberg, supra, the court said [215 Cal. 624, 12 P.2d 448]:

"It is urged that the act does not constitute a proper exercise of the police power. With this contention we cannot agree. Citation of authority is unnecessary to establish that the police power extends to everything expedient for the preservation of the public safety, health, comfort, or good morals. It is within the legislative discretion in the exercise of such power to place such restrictions upon the use of any property or the conduct of any business as may be reasonably necessary for the public safety, comfort, or health. Riley v. Chambers, 181 Cal. 589, 592, 593, 185 P. 855, 8 A.L.R. 418; Matei v. Hecke, 99 Cal.App. 747, 279 P. 470."

In other instances courts seem to view the legislation as giving the health factor a predominant role. In Publix Cleaners v. Florida Dry Cleaning and Laundry Board, supra, the court said [32 F.Supp. 35]:

"The laundry and dry cleaning business is not a purely private one in which the public has no concern. On the contrary, the operation of a modern 'dry cleaning' plant has a direct relation to public health. It is closely akin to a laundry. Unlike a tailor, who deals primarily with new clothing, the dry cleaner collects garments indiscriminately from all classes and varieties of customers and places, soiled by every variety of use. Some may have been exposed to, or infected with, serious contagion. Others may simply need cleaning. These garments are commingled together, sometimes as many as 1,200 at a time, in a horizontally revolving cylinder, which also contains a mineral oil cleaning solvent, where they are oscillated back and forth until thoroughly saturated with the fluid, and in a sense 'washed' by it, after which they are steamed to further insure sterilization and to aid in pressing them."

Section 1 of Chapter 198, Laws of 1941 (1941 Comp. § 51-2101), in part reads:

"This act is enacted in the exercise of the police power of this state. in response to urgent necessity to protect the public health and public welfare; * * * to assure employees in the industry a living wage and reasonable working conditions; * * * and to insure the public a de-

pendable supply of safe, sanitary dry cleaning at reasonable prices; and is enacted to protect the public welfare, public health and public safety.

" * * * and such act is necessary to protect the health, safety, morals and welfare of the public at large who are entitled to protection at law in their social organization, of which such service and industry herein sought to be regulated is an established part; and such act is also necessary to prevent * * * damage to persons and property, * * *.

"The foregoing statements of fact, policy and application of this act, recognizing the service and business herein regulated as a business subject to regulation in the public interest, is hereby declared as a matter of legislative finding and determination."

 We now shall view the questioned act in the light of some familiar rules of construction to be observed in testing the constitutionality of a statute. Primarily, it is presumed to be constitutional, and in doubtful cases will be held otherwise only where the claimed conflict clearly appears. In re Southern Pacific Co., 37 N.M. 11, 16 P.2d 402; State v. Armijo, 38 N.M. 73, 28 P.2d 511. Furthermore, while the courts are not bound by a legislative declaration that a given statute is enacted to serve or accomplish a permissible objective of the police power, such a declaration is entitled to great weight as coming from a coordinate branch of the government when we are asked to pass upon the validity of the

statute. State v. Arnold, supra; State v. Cleveland, supra.

With these established rules of construction in mind, when we prepare to test the validity of the act by the constitutional objections to it persevered in before us and relied upon as well below, we find they resolve themselves, as already indicated, into the contention that the act represents an unreasonable exercise of the police power. Why? Except to challenge the wisdom of such legislation from a standpoint of policy and to enter vehement denial that the dry cleaning industry needs regulation, the defendant furnishes us no answer. How? Again, we are left to grope in the dark as to the respects and the particulars in which the questioned act is unreasonable. True, the defendant charges it is discriminatory against him and all others engaged in the same business in its requirement for the payment of fees. But to take this assertion at its face value without any proof to support it, and then employ same to strike down the act as invalid, would be to permit the defendant to lift himself by his own bootstraps.

 It is argued that because of language in the act directing a construction thereof that would not conflict with, alter or repeal any existing law relating to the board or department of public health of any municipality and providing that its provisions should not supersede any jurisdiction or regulation of the State Board of Health in conflict therewith, the health factor is eliminated as a basis for an exer-

cise of the police power. This contention is made in the face of a finding in the form of a legislative declaration in Section 1 of the statute that it is "enacted in the exercise of the police power of this state in response to urgent necessity to protect the public health and public welfare." The fact that we have a department of public health with prescribed statutory duties and functions does not automatically eliminate the public health as a proper basis for an exercise of the police power. State v. Cleveland, supra. Nor does the fact, as said in Tharp v. City of Clovis, supra, that a prior legislature has placed upon the shoulders of municipal authorities the duty and power to regulate pursuits that are dangerous in promoting fires, deny to succeeding legislatures the power to make the public safety in that respect, if reasonably so moved, the ground for exercising the police power.

The test in all cases is whether the challenged act represents a reasonable exercise of the police power. Except where the question of reasonableness may be answered as a matter of law, of necessity it must depend on proof. The matter was so determined in State v. Arnold, supra. Here, the defendant who challenged constitutionality of the statute as an unreasonable exercise of the police power, tendered no evidence, seemingly satisfied to have the trial court examine the act in the light of his criticisms and rule as a matter of law on its constitutionality. The burden was defendant's to establish invalidity on constitutional grounds, if it be invalid. This burden is not a light one since a strong presumption supports its validity.

It is our conclusion that the act must be upheld against the attack here made upon it. The legislature solemnly declared that it enacted the same in the interest of the public health and safety. We find in the books where courts of several sister states have seen in such legislation the direct relationship either to the public health or to the public safety, or to both, which evidently prompted its passage. The defendant tendered no proof whatever to sustain his claim that, contrary to the legislative declaration, the questioned statute in truth is an unreasonable and unwarranted exercise of the state's police power. He thus fails to rebut the strong presumption of constitutionality which attends the enactment. Whether proof of invalidity exists or can be produced, of course, we do not undertake to say. We simply hold that, absent such proof, the presumption of constitutionality sustains the act.

Finally, it is said that, even if the defendant's assault on the constitutionality of the act must fail, still the complaint does not state a cause of action for the extraordinary equitable relief of injunction. In another suit involving the same act, it seems the trial court previously had held in a judgment from which no appeal was taken that since the act did not expressly authorize collection of delinquent license fees by an action at law, such an action could not be maintained. In so

ruling the trial court evidently deemed the matter controlled by our decision in Town of Gallup v. Gallup Cold Storage Co., 26 N.M. 253, 191 P. 465. We see no reason for disagreeing with its conclusion. See, also, City of St. Paul v. Twin City Motor Bus Co., 187 Minn. 212, 245 N.W. 33, and Annotations in 5 A.L.R. 1312, supplemented in 107 A.L.R. 652.

Laws of 1941, c. 198, § 8, 1941 Comp. § 51-2108, plainly imposes an annual license fee of $25.00 on those engaging in the industry. In addition, Section 10, 1941 Comp. § 51-2110, of the act expressly authorizes the Board to take all steps reasonably necessary and authorized thereunder "to prevent any person performing any such services *without first taking out or paying the license fees * * * prescribed,* including the right to seek an injunction." (Emphasis ours.) Nowhere in the act is express authority given the Board to collect by action the fees prescribed as a condition to the right to engage in the dry cleaning business. The directive to the Board "to provide any and all necessary machinery for prompt collection of any and all license fees assessed" must be construed to mean their collection in advance in view of the language immediately following, and quoted supra, instructing the Board to prevent by all reasonable means any person engaging in the business without paying the license fee, even to the extent of resorting to injunction, if necessary. In thus withholding from the Board authority to collect license fees through an action at law, and in granting it express authority to seek an injunction to prevent any person engaging in the business without having paid the fee, the legislature displayed a keen perception of one of equity's chief functions, viz., that of affording relief where there is no adequate remedy at law. Lougee v. New Mexico Bureau of Revenue Commissioner, 42 N.M. 115, 76 P.2d 6.

It follows from what has been said that the decree appealed from is correct and should be affirmed.

It is so ordered.

MABRY, BICKLEY, BRICE, and THREET, JJ., concur.