422 P.2d 353

STATE of New Mexico, Plaintiff-Appellee,

v.

Peter Anthony ORTEGA and Patricio "Pat" Gonzales, Defendants-Appellants.

No. 8070.

Supreme Court of New Mexico.

Sept. 6, 1966.

Rehearing Denied Nov. 10, 1966.

Joseph A. Roberts, Santa Fe, for appellants.

Boston E. Witt, Atty. Gen., James V. Noble, Myles E. Flint, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

CHAVEZ, Justice.

Defendants-appellants were convicted of aggravated battery in violation of § 40A–3–5, N.M.S.A., 1953 Comp.

Appellants contend that the trial court erred when it denied their motion to set aside the verdict of the jury, because one of the jurors was disqualified by virtue of having been convicted of an infamous crime, to-wit: assault with intent to rape. After hearing arguments of counsel on the motion, the trial court entered an order in which it found that defendants were neither injured nor prejudiced by said juror being on the panel and denied the motion. In support of their contention, appellants appear to argue that our statutes concerning the drawing and empaneling of jurors, §§ 19–1–1 through 19–1–41, N.M.S.A., 1953 Comp., create a presumption that the jury panel be composed of qualified jurors. It is further argued that, when the juror in question stated that he knew of no reason why he should not sit on the jury, said statement, being false, prevented said juror being challenged and denied them a fair trial.

Appellants cite authority from other jurisdictions and argue that we should overrule State v. Manzanares, 33 N.M. 573, 272 P. 565. They urge that we establish a rule that the presence of an unqualified juror raises the presumption that actual injury has been done.

Appellants' cases cited from other jurisdictions are not applicable here, as they are not concerned with a statute such as ours. State v. Manzanares, supra; although holding that the burden rests upon the party

complaining to show an "actual injury," does not control the situation before us. Manzanares considered the relationship of certain jurors to the prosecuting witness, a situation not provided for in the statute which controls this case.

The disqualification involved here is noted in § 19–1–1, supra, which provides:

"Every citizen, whether male or female, of the United States over the age of twenty-one (21) years, of sound mind, who has been a bona fide resident of the state for one (1) year and of the county for which he may be selected or drawn for six (6) months immediately preceding his being selected or drawn as a juror, who has not been convicted of bribery as provided by section 41–801 of the 1941 Compilation [40–8–1], or who has not been convicted of any infamous crime, or subject to any disqualification hereinafter expressly prescribed by law, shall be qualified and liable to be selected, summoned and serve as a grand or petit juror in the district court in the county where he resides."

■ Section 19–1–2, supra, exempts certain "classes of persons" from jury service and then provides:

"* * * The service upon any jury or any person disqualified, or exempt from service under the provisions of this act, or any act hereafter passed, shall of itself not vitiate any indictment found or any verdict rendered by such jury, unless actual injury to the person complaining of the same shall be shown, * * *."

It is clear to us that the above provision pertains to the exemptions provided for in § 19–1–2, supra, and to the disqualifications noted in § 19–1–1, supra. Legislative intent is to be determined primarily by the language of the act. Montoya v. McManus, 68 N.M. 381, 362 P.2d 771. We see no reason to apply any rules of statutory construction to override an intent which is clear and plainly appears. Bradbury & Stamm Construction Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808.

■ The trial court refused to set aside the jury verdict because it felt that appellants had failed to show any actual injury resulting from the presence of the unqualified juror. Appellants claim that, since appellee had a record which would show the juror's conviction, it must have felt that the juror was favorable to appellee and, therefore, left him on the jury. This, however, is merely speculation and not a showing of actual injury as required by the statute.

Appellants further contend that there was insufficient evidence of "great bodily harm" required by § 40A–3–5, supra, and defined in § 40A–1–13, subd. A, 1953 Comp., which states:

"A. 'Great bodily harm' means an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body;"

It seems clear that the legislature adopted this definition in an effort to cover, among others, the crime of mayhem originally enacted in 1853–54 (§ 40–30–1, N.M.S.A., 1953 Comp., now repealed). The old description of the crime of mayhem was closely related to the crime as it existed at common law. Also, it was very similar to the description adopted by the territorial legislature of Hawaii, which the supreme court of Hawaii considered in State v. Sorenson, 44 Haw. 601, 359 P.2d 289, wherein that court concluded that the changes in wording from the old statutes to the new provisions indicate that the legislature intended to extend the offense of battery involving disfigurement beyond the confines of common law mayhem. That case does not assist us further since the acts involved there were much different than in the instant case. The court was presented with a statute requiring only "disfigurement," not "serious disfigurement" as found in our statute, and we find no cases interpreting the phrase which our legislature adopted.

■ We believe that the word "disfigurement" has no technical meaning and should be considered in the ordinary sense. State v. Nieuhaus, 217 Mo. 332, 117 S.W. 73. The same is also true of the word "serious."

■ The jury was instructed on the crime of battery and on the definition of "great bodily harm" in the language of the statute. The evidence shows that the appellants forcibly tattooed the victim with a needle and India ink. The tattoo extended from the back of the victim's neck to the center part of the waist, and recited an offensive sentence in large letters. A doctor testified that it would take "strenuous and extensive" skin grafting to remove the tattoo.

We agree with the court in State v. Edwards, 28 N.J. 292, 146 A.2d 209, wherein it stated:

"Under these circumstances, it became a question of fact * * * as to whether or not the injuries sustained were sufficiently substantial to come within the definition of the statute. * * *."

In the instant case the jury determined that the victim's injuries were so sufficient, and we see no reason to alter that finding.

The judgment is affirmed.

It is so ordered.

COMPTON, J., and E. T. HENSLEY, Jr., C. J., Court of Appeals, concur.